**W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Appellant,**

v.

**Kenneth WILLIAMS, d/b/a Williams Sand & Gravel Company, Appellee.**

No. 22999.

United States Court of Appeals
Fifth Circuit.
Dec. 1, 1966.

Bessie Margolin, Assoc. Sol., Dept. of Labor, William Fauver, Atty., Dept. of Labor, Charles Donahue, Sol. of Labor, Robert E. Nagle, Atty., Dept. of Labor, Washington, D. C., Beverley R. Worrell, Regional Atty., for appellant.

J. Malcolm Robinson, Austin, Tex., for appellee.

Before JONES and DYER, Circuit Judges, and SPEARS, District Judge.

DYER, Circuit Judge.

This is an appeal by the Secretary of Labor from a judgment denying an injunction prohibiting the appellee from violating the minimum wage, overtime compensation and record keeping provisions of the Fair Labor Standards Act, 29 U.S.C.A. Sec. 201 et seq.

After a trial, the District Court filed its findings of fact and conclusions of law. It found that the appellee was engaged in the transportation and delivery of sand and gravel utilized in the construction, reconstruction, repair and maintenance of certain highways that were essential instrumentalities of interstate commerce. It found further that the appellee had kept adequate records, and that it had paid its employees both the minimum wages and overtime compensation required by the Act. We disagree.

During the period in question, October, 1961, to December, 1963, appellee regularly employed approximately twenty truck drivers and, due to turnover, some two hundred and twenty nine employees. The drivers usually worked eleven to twelve hours a day, but the number of days worked each week varied because of weather conditions and the different phases of highway construction.

The drivers were paid "by the load rather than by the hour", each trip having an assigned number of hours for pay purposes based on appellee's estimate of the normal driving time per trip, plus "anywhere from 5 to 15 minutes" to cover loading time and any unusual experience the drivers might encounter. In actual practice, these estimates turned out to be unreliable, for the drivers' trip times varied substantially from delivery to delivery because of traffic conditions, the time of day, the number of trucks hauling to a particular place and the waiting time to have the truck loaded. The drivers nevertheless were credited with the allotted time per trip regardless of how long it took to make the delivery. At the end of the week each driver's trip tickets were turned over to the bookkeeper, who multiplied the driver's trips by the hours allotted for each trip and entered this figure on the payroll as the driver's working time for that week, without indicating the days on the job or the hours credited per day. Wages were determined by multiplying the employee's total estimated hours times a set hourly rate, with estimated overtime being multiplied by one and one-half times that rate. No record was made of the driver's starting time, quitting time or actual hours worked.

■ The evidence is thus clear that the appellee has not kept records of the actual time consumed by the truck drivers on the various trips but has recorded only an assigned estimated number of hours that the trips were supposed to consume. Clearly, appellee has not fulfilled his duty to keep accurate daily and weekly records of the hours actually worked by each employee.[1] Goldberg v. Thompson, 5 Cir. 1961, 287 F.2d 421; Goldberg v. Cockrell, 5 Cir. 1962, 303 F.2d 811; McComb v. La Casa del Transporte, Inc., 1 Cir. 1948, 167 F.2d 209; Walling v. Panther Creek Mines, Inc., 7 Cir. 1945, 148 F.2d 604; Mitchell v. Mitchell Truck Line, Inc., 5 Cir. 1961, 286 F.2d 721.

Since the records were not kept, there is nothing against which to compare the testimony that the normal work day was eleven to twelve hours and that the employees were underpaid. Thus, although there is substantial evidence to support a finding of a violation of the Act's wage and overtime compensation provisions, it is difficult if not impossible to ascertain the exact extent of that violation.

■ We have no doubt, however, that the manner in which appellee computed his employees' overtime compensation did not comply with the Act. Section 7 requires payment of not less than one and one-half times the regular rate for all hours worked in excess of forty per week. In the posture of this case the formula for determining the regular rate of pay, which must be the hourly rate actually paid for non-overtime work, 149 Madison Ave. Corp. v. Assetta, 331 U.S. 199, 67 S.Ct. 1178, 91 L.Ed. 1432; Nunn's Battery and Electric Co. v. Goldberg, 5 Cir. 1962, 298 F.2d 516, is to divide the wages actually paid for non-overtime work by the total non-overtime hours actually worked and compute additional payment to drivers on that basis. Bay Ridge Operating Co., Inc. v. Aaron, 334 U.S. 446, 68 S.Ct. 1186, 92 L.Ed. 1502. *But* here there was no record of the hours actually worked, so a determination of the "regular rate" cannot be made. Without the determination of a regular rate the proper level of overtime compensation cannot be computed. The District Court's finding that the appellee complied with the overtime compensation requirements of the Act must therefore be held to be clearly erroneous.

■ We also conclude that the District Court's finding that Josephine Lehan was an "executive" (and therefore

---

1. Section 11(c) of the Act authorizes the Administrator to prescribe the records to be kept by employers. By regulation published September 13, 1941, 29 C.F.R. 516.2(a) (7) employers are required, *inter alia*, to maintain for each employee a record of the "hours worked each workday and total hours worked each week".

exempt from the provisions of the Act) is clearly erroneous.

The criteria for determining executive status under the Act are set out in the regulations under § 13(a) (1).[2] Miss Lehan meets only one of the six conjunctive criteria, and does not qualify under the *proviso* of the regulation.

During her two year employment she worked forty-eight to fifty-six hours per week as appellee's sole bookkeeper and office employee except for the last seven months when an additional bookkeeper was hired. Other than orienting this new employee to appellee's bookkeeping procedure, she spent her entire two years keeping appellee's records on delivery of sand and gravel to highway jobs, preparing invoices, posting accounts receivable and payable, and computing time and payrolls. There was no evidence that she had anything to do with the hiring or firing of employees or made any suggestions or recommendations concerning these matters.

All management decisions were made solely by the appellee, who determined working conditions, hours and pay, and dictated employment and record-keeping policies, leaving no discretionary power in his bookkeeper, Miss Lehan.

Finally, even if appellee contends that Miss Lehan's primary duty was management of the "bookkeeping department" and included directing the work of the additional employee at any time that Miss Lehan's salary was as high as $125 per week, she would not be exempt; for the regulations require that she supervise at least two employees.

There being clear violations of the Act's wage, maximum hour and record keeping requirements, the judgment must be reversed. The trial court should permit the introduction of such legal evidence as the parties may consider appropriate concerning any prior record of appellee's compliance, or change of circumstances, and in the light of the principles announced in the decided cases, reconsider the prayer for injunctive relief. Goldberg v. Thompson, supra. Durkin v. Lovknit Mfg. Co., Inc., 5 Cir. 1953, 208 F.2d 665.

The judgment is reversed and the case remanded for further proceedings not inconsistent with this opinion.

2. The "executive" regulation in force during Miss Lehan's employ was:

29 C.F.R. § 541.1—Executive.

The term "employee employed in a bona fide executive * * * capacity" in section 13(a) (1) of the act shall mean any employee:

(a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof; and

(b) Who customarily and regularly directs the work of two or more other employees therein; and

(c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and

(d) Who customarily and regularly exercises discretionary powers; and

(e) Who does not devote more than 20 percent of his hours worked in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (d) of this section * * *; and

(f) Who is compensated for his services on a salary basis at a rate of not less than $80 per week * * *: *Provided*, that an employee who * * * is compensated on a salary basis at a rate of not less than $125 per week * * *, and whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein, shall be deemed to meet all of the requirements of this section.