**Peter J. BRENNAN, Secretary of Labor, Plaintiff-Appellee,**

**v.**

**ELMER'S DISPOSAL SERVICE, INC., Defendant,**

**and**

**Universal By-Products, Inc., a corporation dba Universal Refuse Removal Co. of El Cajon, Defendant-Appellant.**

No. 72-2783.

United States Court of Appeals, Ninth Circuit.

Jan. 13, 1975.

David G. Miller, Loeb & Loeb, Los Angeles, Cal., for defendant-appellant.

Edith Barnett (argued), Dept. of Labor, Washington, D. C., for plaintiff-appellee.

Before DUNIWAY and HUFSTEDLER, Circuit Judges, and LUCAS,* District Judge.

## OPINION

LUCAS, District Judge:

The Secretary of Labor brought this action against Elmer's Disposal Service, Inc. and others to enjoin violations of the overtime compensation provisions of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 207(a)(1) and 215(a)(2), and to restrain defendants from withholding unpaid compensation allegedly due defendants' employees. The district court entered judgment for the Secretary and granted the requested injunctive relief as well as restitution for unpaid overtime compensation. The only issues on appeal are whether defendants' fixed salary plan violates the overtime requirements of the Act and whether defendants' deductions of pay for employees' allotted meal periods were improper.

Defendant Elmer's Disposal Service was a wholly owned corporate subsidiary of Universal By-Products, Inc., engaged in the business of refuse collection and removal in and around El Cajon, California. In 1969 the subsidiary was merged into Universal By-Products, Inc., which has carried on the business of Elmer's in the El Cajon area since then under the

* Honorable Malcolm M. Lucas, United States District Judge, Central District of California, sitting by designation.

name Universal Refuse Removal Company of El Cajon. This appeal is brought by Universal By-Products, Inc.

Among appellant's employees were personnel assigned to regular collection routes. These drivers, helpers, and swampers were paid a fixed salary for a six-day, fifty-hour work week. The amount of fixed compensation was calculated at a specified hourly rate for the first forty hours, plus one and one-half that rate for the remaining ten hours. Unless the employee missed a day of work, worked more than fifty hours in one week, or worked "relief," he was paid the fixed weekly salary regardless of the time actually worked. For each day missed, the employee was docked one-sixth of the fixed salary without reference to the number of hours actually worked that week. If the employee worked more than fifty hours on his route in one week, he was paid the fixed salary plus one and one-half times the specified hourly rate for all hours worked over fifty. The employee could also work "relief" on other routes, for which he was paid at one and one-half times the specified hourly rate. The appellant kept records with respect to the number of hours worked by each employee and maintained a clock-in, clock-out system for that purpose. There was also evidence at the trial that the weekly paycheck stubs given employees showed which hours were paid at the straight time, and which hours were paid at one and one-half times that rate. The specified hourly rate was established by the appellant without an explicit contract or collective bargaining agreement with the employees.

The trial court found this wage plan in violation of the Act. Its conclusion was based on the Secretary's proof that the fixed weekly rate did not change with the amount of hours worked up to fifty hours, together with the absence of any showing of an explicit contract or agreement between the employees and the appellant concerning the specified hourly rate. The trial court also found that because employees were encouraged by the wage plan to work through their allotted lunch periods, and because most of them did work through, the deductions made from the salaries of all employees for a one-half hour lunch break each day were improper. We affirm the judgment of the trial court on both issues.

Section 7(a)(1) of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 207(a)(1), provides in pertinent part:

" . . . [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed. . . . "

It is settled law that wage plans under which an employer pays a fixed weekly salary for irregular workweeks violate this statute when the number of hours actually worked are in excess of the statutory overtime requirements. Warren-Bradshaw Drilling Co. v. Hall, 317 U.S. 88, 93, 63 S.Ct. 125, 127, 87 L.Ed. 83 (1942); Overnight Motor Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942). This is true even where the employer can show the fixed salary is the sum of a designated hourly rate for forty hours, plus one and one-half the designated rate for hours worked over forty. Overnight Motor Co. v. Missel, supra. The Supreme Court long ago rejected employer assertions that the "regular rate" for any week under such wage plans is anything but the fixed salary divided by the number of hours actually worked that week. Overnight Motor Co. v. Missel, supra, 316 U.S. at 580, 62 S.Ct. at 1221.[1]

---

1. There are exceptions to this rule. 29 U.S.C. § 207(b), (f), (g), and (i). For example, if the employer and employee make an explicit agreement, either by contract or collective

■ Appellant would distinguish its wage plan from those held to violate the Act. Essentially, appellant argues the specified hourly rate from which the fixed weekly rate was established is the "regular rate" described by § 207(a)(1). To support the contention that its wage plan does not violate the Act, appellant points to its maintenance of records for hours worked and wages paid, and its payment at one and one-half times the designated rate for all hours worked in excess of fifty. The trial court relied on Nunn's Battery & Electric Co. v. Goldberg, 298 F.2d 516 (5 Cir. 1962) to hold that because appellant could not show the employees explicitly agreed to the purported "regular rate," the mere allocation of a portion of the fixed weekly salary as "regular" compensation and another portion to time and one-half the "regular" compensation did not satisfy the overtime provisions of the Act. See also Wirtz v. Leon's Auto Parts Company, 406 F.2d 1250 (5 Cir. 1969); Triple "A.A.A." Company v. Wirtz, 378 F.2d 884 (10 Cir. 1967); and Hodgson v. Elm Meats of Kentucky, Inc., 327 F.Supp. 1009 (E.D.Ky.1971) aff'd 463 F.2d 1186 (6 Cir. 1972). We agree with the trial court that the Act does not allow appellant to designate unilaterally what the "regular rate" will be, then, on the basis of that designation, pay employees a predetermined sum for up to fifty hours per work week and one and one-half the designated rate for all hours worked in excess of fifty.

It is true appellant's wage plan differs somewhat from those held to violate the Act in the past. In none of the cases, for example, had there been a showing that the employer kept records of the

hours worked and wages paid with the diligence shown here by appellant. See e. g., Overnight Motor Co. v. Missel, *supra*, 317 U.S. at 574, 62 S.Ct. at 1218; Wirtz v. Leon's Auto Parts, *supra*, 406 F.2d at 1252; Triple "A.A.A." Company v. Wirtz, *supra*, 378 F.2d at 886; and Hodgson v. Elm Meats of Kentucky, *supra*, 327 F.Supp. at 1012. Furthermore, it is not customary that such wage plans include provisions for payment of "overtime" rates for hours worked in excess of the guaranteed hours as did appellant's, and there was no finding this plan was intended to avoid the requirements of the Act. Two findings by the trial court, however, preclude reversal on this issue—the lack of agreement between appellant and its employees, and the one-sixth reduction in pay for each day missed without regard to the hours worked in the week.

■ The lack of agreement is, of course, the crucial element in this case. The legislative policy of the overtime provisions of the Act is to spread employment throughout the work force by putting financial pressure on the employer, and to compensate employees for the burden of overtime workweeks. Bay Ridge Operating Co. v. Aaron, 334 U.S. 446, 460, 68 S.Ct. 1186, 1194, 92 L.Ed. 1502 (1948); Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 423–424, 65 S.Ct. 1242, 1244, 89 L.Ed. 1705 (1945); Walling v. Helmerich & Payne, 323 U.S. 37, 40, 65 S.Ct. 11, 13, 89 L.Ed. 29 (1944). Any guaranteed wage plan such as appellant's runs counter to this policy, and the policy is clearly not served by the wage plan here that gives the employer ten hours of overtime work

bargaining agreement, on the "basic rate" of compensation by which to compute the guaranteed salary before the work is performed, and the employee is paid at least one and one-half times the agreed upon rate for hours in excess of forty, the requirements of the Act are met. Walling v. A. H. Belo Corp., 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716 (1942); see also Nunn's Battery & Electric Company v. Goldberg, 298 F.2d 516, 520 (5 Cir. 1962); 29 U.S.C. § 207(f). Once the Secretary has made a prima facie showing that the wage plan does not meet the stand-

ards of the statute or Overnight Motor Co. v. Missel, however, the burden is shifted to the employer to prove its wage plan fits within the exceptions. Cf. Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960); Mitchell v. Kentucky Finance Co., 359 U.S. 290, 295, 79 S.Ct. 756, 759–760, 3 L.Ed.2d 815 (1959); Phillips, Inc. v. Walling, 324 U.S. 490, 493, 65 S.Ct. 807, 808, 89 L.Ed. 1095 (1945). This burden of proof requirement may explain appellant's claim that it does not rely on the exceptions to the rule, statutory or judge-made.

at no greater rate than the first forty hours of work, then allows for a discounted overtime rate for hours above fifty. In order for such wage plans not to contravene the statute, all the cases require explicit agreement between the employer and the employees or their bargaining agent as to the designated rate of compensation. Walling v. Belo Corp., *supra*; Overnight Motor Co. v. Missel, *supra*; Triple "A.A.A." Company v. Wirtz, *supra*; and Nunn's Battery & Electric Co. v. Goldberg, *supra*. The trial court found no such agreement, and thus its conclusion that the plan violated the act was entirely proper.

Appellant would have this court infer from certain elements of its wage plan and wage practices that an agreement was reached between itself and its employees concerning the designated rate. Appellant would also place the burden of proof on the Secretary to show no such agreement exists. See footnote 1, *supra*. Like the trial court, we are unconvinced. Appellant has failed to present any evidence of negotiation or agreement concerning the regular rate of compensation it paid to its employees. That the employees did not complain of the plan is not sufficient to support a finding that the designated rate was the "regular rate" described by the statute or that the employees agreed to the designation made by appellant. Although the employees may have been aware of the rate designation because it showed on the paycheck stubs, the cases and the statute require an explicit agreement, and none was proved in this case. Walling v. Belo Corp., *supra*; Overnight Motor Co. v. Missel, *supra*; Triple "A.A.A." Company v. Wirtz, *supra*; and Nunn's Battery & Electric Co. v. Goldberg, *supra*.

Finally, while not a necessary element of the Secretary's case, the fact that appellant docked absent employees a flat one-sixth of the fixed weekly wage for each day missed without reference to hours worked tends to strengthen the conclusion that this wage plan violates the Act's overtime provisions. 149 Madison Ave. Corp. v. Asselta, 331 U.S. 199, 67 S.Ct. 1178, 91 L.Ed. 1432 (1947). For example, an employee would lose as much for a second day's absence as for a first, although the first might result in a reduction in the overtime hours and the second might not. Although the wage plan here may have run closer to a technical violation than to outright economic exploitation, the principles applied to the Overnight Motor Company's wage plan in 1942 are still the measure of the validity of such plans. Compare Overnight Motor Company v. Missel, *supra*, with Nunn's Battery & Electric Co. v. Goldberg, *supra*. Based on that standard, we hold the trial court correctly found appellant's wage plan violated 29 U.S.C. § 207(a)(1).

■ The second issue raised on appeal is the propriety of appellant's deductions of one-half hour's wages each day from each employee for lunch breaks. An employee cannot be docked for lunch breaks during which he is required to continue with any duties related to his work. Biggs v. Joshua Hendy Corp., 183 F.2d 515 (9 Cir. 1950); Mills v. Joshua Hendy Corp., 169 F.2d 898 (9 Cir. 1948); 29 C.F.R. § 785.19. Appellant's challenge to the district court's judgment on this issue is directed primarily at the findings that most employees did not stop for lunch and were encouraged not to stop by the wage plan. The trial court heard substantial testimony, mostly from employees, to support those findings. The credibility of these witnesses was the main issue at trial concerning their testimony. The findings of the trial judge concerning the facts attested to by these witnesses were not "clearly erroneous." The credibility of witnesses is best determined by the judge at trial. Gilreath v. Daniel Funeral Home, 421 F.2d 504, 510 (8 Cir. 1970); Fed.R.Civ. Proc. 52(a). The record and the law support the conclusions of the trial judge on this issue.

The judgment of the District Court is affirmed.