Raymond J. DONOVAN

v.

TWO "R" DRILLING COMPANY, INC., et al.

Civ. A. No. 81–3066.

United States District Court, E.D. Louisiana.

Feb. 29, 1984.

As Amended March 28, 1984.

**23.** PX 1–E.

James J. Manzanares, U.S. Dept. of Labor, Dallas, Tex., for plaintiff.

John H. Ryan, Ryan & Willeford, New Orleans, La., Perrin Butler and Robert Stern, Metairie, La., for defendants.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

PATRICK E. CARR, District Judge.

This is an action by the Secretary of Labor, United States Department of Labor, to enjoin defendants, Two "R" Drilling Co., Inc., Robert H. Reeves, Jr., the Chief Executive Officer of Two "R", and Charles E. Reeves, the Executive Vice-President of Two "R" from violating the provisions of § 15(a)(2) of the Fair Labor Standards Act of 1938, 29 U.S.C. § 215(a)(2) (sometime hereinafter the "FLSA"), and to restrain the withholding by defendants of payment of overtime compensation allegedly due defendants' employees under the FLSA.

Essentially, the dispute between the Secretary and Two "R" concerns whether Two "R's" work incentive plan complies with the overtime provisions of § 7 of the FLSA, 29 U.S.C. § 207. The Secretary contends that the incentive payment (equivalent to ten hours pay at time and one-half) is a sum that is required by Section 7 to be included in the employees' "regular rate" for purposes of computing overtime premium. As overtime is due at one and one-half times the "regular rate", any items includable within the regular rate have the mathematical effect of increasing the amount of overtime earned. Because the defendants did not, in computing the employees' regular rates, add this incentive

pay to their hourly wage rates, the Secretary maintains that defendants did not pay the minimum overtime required by the FLSA in the case of employees who received the incentive payments.

The facts of this case including the operation of Two "R's" incentive compensation plan have been stipulated. On September 30, 1983, the question of defendants' liability was submitted for decision by the Court. After considering the pleadings, the stipulations, and the law applicable to this case, the Court makes the following findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure.

1. Jurisdiction of this action is conferred upon the Court by Section 17 of the Fair Labor Standards Act of 1938.

2. Defendant, Two "R" Drilling Co., Inc., is now, and at all times material to this action was, a corporation with a place of business and doing business at Concord Road, Terrebonne Parish, Houma, Louisiana, within the jurisdiction of this Court.

3. At all times material to this action, defendant, Two "R" Drilling Co., Inc., has been an enterprise within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r), in that defendant has been, through unified operation or common control, engaged in the performance of related activities for a common business purpose.

4. At all times material to this action defendant, Two "R" Drilling Co., Inc., has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that it has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $250,000 (exclusive of excise taxes at the retail level).

5. Defendant, Robert H., Reeves, Jr., the President of Two "R" Drilling Co., Inc., has at all material times acted, directly and indirectly, in the interest of said corporation in relation to its employees and is therefore an employer of said employees within the meaning of section 3(d) of the FLSA, 29 U.S.C. § 203(d). *See* Answer to Amended Complaint.

6. Defendant, Charles E. Reeves, the Vice-President of Two "R" Drilling Co., Inc., has at all material times acted, directly and indirectly, in the interest of said corporation in relation to its employees and is therefore an employer of said employees within the meaning of section 3(d) of the FLSA, 29 U.S.C. § 203(d). *See* Answer to Amended Complaint.

7. Two "R" Drilling Co., Inc. is a fossil fuel drilling company which operates in the inland waters of the State of Louisiana. The company utilizes floating drilling barges for which it employs various crew members. Included within the crews of these various inland drilling barges are drillers, motormen, derrickmen, rotary helpers, roustabouts and galley hands. All of the aforementioned individuals are hourly employees who worked tours of duty of twelve hours per day, seven days per week (or tours of duty totaling 84 hours per week) on a 7 days on—7 days off basis.

8. It has been stipulated that each hourly employee of Two "R" Drilling Co. Inc. was paid an hourly wage that exceeded the minimum hourly wage prescribed by section 6 of the FLSA, 29 U.S.C. § 206, and that each was paid for all of the hours that he or she worked over 40 per week at one and one-half times the hourly rate paid for the first 40 hours worked.

9. It has also been stipulated that from July 15, 1978 to July 1, 1980, Two "R" paid a sum equivalent to ten times the hourly wage for the first forty hours worked to each employee who: (1) Completed an 84 hour tour of duty as scheduled; (2) reported to the "showup" point on time for transportation to the designated drilling barge; (3) arrived at the "showup" in the proper physical and mental condition to perform

his job duties; (4) brought the necessary personal effects to perform his tour of duty; and (5) remained on board the drilling barge throughout the entire "hitch" without returning to the starting point for any reason. This payment was simultaneously increased by adding to it a second sum of money equivalent to five times the hourly wage rate for the first forty hours of the workweek.[1]

10. Therefore, under the compensation plan in question, each hourly employee who worked an 84 hour tour of duty and who satisfied certain other requirements was paid as follows: 40 hours at straight time; 44 hours at one and one half times the hourly rate paid for the first 40 hours; and 10 hours at one and one-half times the hourly rate paid for the first 40 hours. Any such employee who worked less than his tour of duty of 84 hours per week or who failed to satisfy the other conditions was paid premium pay for all hours in excess of 40 during that workweek, but did not receive the incentive payment described above.

11. The principal issue before the Court is whether the incentive payment in question should have been included in the "regular rate" pursuant to § 7 of the FLSA for the purpose of computing the minimum overtime pay required by law. At the heart of this dispute is the characterization to be given to the payment. The Secretary contends that the entire payment is a bonus which was intended to induce employees to complete the scheduled 84 hour workweek, and that no part of it consisted of "extra compensation" creditable towards overtime compensation. In his view the entire payment was as much a part of the "regular" pay of Two "R's" employees as the hourly pay for the first forty hours of the workweek. Therefore, the Secretary contends that these earnings should have been included in the "regular rate" for the purpose of computing the minimum overtime pay required by statute, and that Two "R's" failure to do so caused Two "R" to pay an overtime premium that was less than the statutory minimum.

Two "R" on the other hand, contends that the payment was not intended as an attendance bonus, but as compensation for activities preliminary or postliminary to its employees' principal activities and therefore, is excludable from the regular rate pursuant to § 4(a)(2) of the Portal to Portal Act, 29 U.S.C. § 254(a)(2). Alternatively, Two "R" argues that the payment should not be viewed as a lump sum equivalent to ten hours pay at time and one half, but as two separate payments, one payment equivalent to 10 times the hourly rate paid … for the first forty hours of the workweek and a second payment equivalent to one half the amount of the first payment. Two "R" contends that this latter payment is "extra compensation" which is creditable towards overtime compensation, and that if it were included in the regular rate, Two "R" would be required to pay overtime premium on overtime premium, a result that has been rejected by the Supreme Court.

---

1. Paragraph 6(d) of the Joint Stipulation describes the operation of the Two R work incentive plan. It provides:

> (d) When [Two R employees] worked the tour of duty of 12 hours per day seven days per week or longer (i.e., more than 84 hours in the seven day period) and met other enumerated conditions, they were paid an additional money payment equivalent to 10 times the hourly rate paid to them for the first forty hours. This payment was automatically increased by adding to it a second sum of money equivalent to one-half the amount of the payment.

"Other enumerated conditions" is defined in paragraph 11 of the Joint Stipulation reprinted below:

> 11. The term "other enumerated conditions" as used herein includes the following:
> (a) Travelling to and being at the dock on time, prior to the commencement of the tour of duty, in proper physical and mental condition, for a 12-hour work day;
> (b) Having brought any necessary personal attire and toiletries or other personal effects necessary for a 7-day tour.
> (c) Having his personal affairs in order such that he can remain on the tour for a full 7-days.
> (d) That during the 12-hour non-working portion of the day, he did not require boat transportation, for personal reasons, to take him from the rig where he was assigned.

12. Section 7 of the FLSA requires an employer to compensate overtime work at fifty percent more than the "regular rate" of pay.[2] "Regular rate" is defined in section 7(e). That subsection provides that "the regular rate at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employees ..." with certain exceptions three of which, it is argued, apply here.

13. The first exception excludes certain overtime payments from the regular rate. In *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 68 S.Ct. 1186, 1196–97, 92 L.Ed. 1502 (1945), the Supreme Court concluded that by enacting the overtime provisions of the FLSA, Congress could not have intended to allow overtime premium on overtime premium, a result that would obtain if overtime compensation were included in the regular rate. Consequently, the Court held that the regular rate need only reflect those payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments. This exclusion was subsequently incorporated into the language of section 7. Subsection 7(e)(5) provides that

> the "regular rate" shall not be deemed to include—extra compensation provided by a premium rate paid for certain hours worked by the employee in any day of the workweek because such hours are hours worked in excess of the maximum workweek applicable to such employee under subsection (a) of this section or in excess of the employee's normal working hours or regular working hours, as the case may be...

14. Because § 7(e)(5) excludes only overtime compensation, the Court must determine whether the incentive payment in question, or any portion thereof, consisted of overtime compensation. If a portion of the payment was in fact paid as overtime compensation as Two "R" contends, then that portion is excludable from the regular rate pursuant to § 7(e)(5). On the other hand, if the entire payment was a bonus, no part of which was compensation for overtime as the Secretary contends, it is not excludable from the regular rate by virtue of § 7(e)(5).

15. On the record before it, the Court cannot conclude that any portion of the payment was, in fact, compensation for overtime. Although the parties have stipulated (1) that a payment equivalent to ten times the hourly wage paid for the first forty hours of the workweek was paid to Two "R" employees who worked a complete tour of duty and who satisfied certain other conditions; that the amount was *simultaneously* increased by one-half; and that Two "R" intended to satisfy the minimum overtime compensation requirements of the FLSA, these stipulations do not compel the conclusion that the payment in question, or any portion thereof, is "extra compensation" creditable toward overtime compensation.[3] The fact that Two "R" "simultaneously increased" a payment, equivalent to ten hours pay at straight time, by one-half does not establish that this increase is compensation for overtime, just as the fact that Two "R's" avowed

**2.** Section 7(a)(1) of the Act (29 U.S.C. § 207(a)(1)) provides as follows:

Section 7(a)(1)—Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the *regular rate* at which he is employed. (emphasis supplied)

**3.** Indeed this stipulation is curious because the characterization and composition of the payment in question is at the heart of the dispute between the parties. Two "R" contends that it paid one sum equivalent to ten hours pay at straight time as a bonus, and a second sum equivalent to one-half of the amount of the first sum as overtime compensation. The Secretary on the other hand, contends that Two "R" paid one lump sum equivalent to 10 hours pay at time and one-half, and that no part of this sum consists of overtime compensation.

532

intention to comply with the overtime provisions of the FLSA does not establish that it did in fact comply with the FLSA.

16. In determining whether a payment genuinely represents compensation for overtime, "courts are required to look beyond that which the parties have purported to do." *149 Madison Avenue Corp. v. Asselta*, 331 U.S. 199, 67 S.Ct. 1178, 1181, 91 L.Ed. 1432 (1947). When employees regularly receive payments such as those at issue here, Courts have often disregarded an employers assertions of overtime compensation. *See e.g., Nunn's Battery & Electric Co. v. Goldberg*, 298 F.2d 516, 519 (5th Cir.1962).

▪ 17. The Court finds that the stipulations do not establish or permit an inference that any portion of the incentive payment in question was compensation for overtime, and that the record is devoid of other evidence from which the Court may infer that any portion of the payment was in fact overtime compensation. Two "R" has not presented any evidence concerning how these payments were recorded on its books or on its employees pay stubs and how they were viewed by its employees. In the absence of such evidence, the Court cannot conclude that Two "R's" assertion that it intended to comply with the FLSA that, in fact, the incentive payment was compensation for overtime. The incentive payment had no relation to the number of overtime hours worked. It was paid to employees who completed a regularly scheduled hitch and who satisfied certain other conditions. The working of the first hour of the hitch or the first 40 was just as essential to earning the bonus as was working the hours beyond forty. *cf. Bibb Mfg. Co. v. Walling*, 164 F.2d 179, 180 n. 2 (5th Cir.1948). The fact that the bonus was equivalent to one and one-half times the straight hourly rate does not necessarily make any part of the bonus an overtime payment.

▪ 18. The purpose of the overtime provisions of the FLSA is to spread employment throughout the work force by putting financial pressure on the employer, and to compensate employees for the burden of overtime workweeks. *Nunn's Battery & Electric Co. v. Goldberg*, 298 F.2d 516, 519 (5th Cir.1962). Neither of these goals is fostered by the hypothetical, retrospective construction of a payment for overtime work. It is the actual fact of payment of "extra compensation" for overtime work which propogates the goals of the FLSA. *Brennan v. Valley Towing Co., Inc.*, 515 F.2d 100, 106 (9th Cir.1975). On the record before it, the Court cannot conclude that Two "R's" asserted payment for overtime, is not a hypothetical, retrospective construction.

▪ 19. Two "R" bears the burden of establishing that its payment or a portion thereof, consisted of overtime compensation excludable from the regular rate pursuant to section 7(e)(5). *Donovan v. Brown Equipment and Service Tools, Inc.*, 666 F.2d 148 (5th Cir.1982). Because the stipulations do not establish that all or a portion of the payment was in fact compensation for overtime, and because the record is devoid of other evidence on which the court may base such a finding, the incentive payment in question may not be excluded from the regular rate by virtue of section 7(e)(5).

20. The second exception which defendants argue is applicable is provided by section 4(a)(2) of the Portal to Portal Act, 29 U.S.C. § 254(a)(2). Although that section does not expressly exclude any payments from the regular rate, it does relieve an employer from liability for failure to pay an employee overtime compensation on account of the following activities:

"(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and

(2) activities which are preliminary to or postliminary to said principal activity or activities which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular work-

day at which he ceases, such principal activity or activities."

21. "By enacting § 4(a)(2) of the Portal to Portal Act, Congress relieved employers from back wage liability under the FLSA for time spent by their employees in 'activities which are preliminary to ... [their] principal activity or activities which occur prior to the time on any particular workday at which [the] employee commences ... such principal activity or activities." *Dunlop v. City Electric, Inc.*, 527 F.2d 394, 397 (5th Cir.1976) (footnote omitted). Because § 4(a)(2) relieves an employer from back wage liability, it in effect exempts from the regular rate an employer's payments for work performed preliminary to or postliminary to the employee's principal activity or activities.

22. The Portal to Portal Act exemption has been interpreted narrowly. "Decisions construing the Portal to Portal Act ... make clear that the excepting language of section 4 was intended to exclude from FLSA coverage only those activities predominantly ... spent in [the employees'] own interests. No benefit may inure to the company. The activities must be undertaken for [the employees'] own convenience, not being required by the employer and not being necessary for the performance of their duties for the employer. The exemption was not intended to relieve employers from liability for any work of consequence performed for an employer, from which the company derives significant benefit.' Nor was the exemption to apply to work 'performed ... before or after the regular work shift ... [as] an integral and indispensable part of the principal activities for which covered workmen are employed.'" *City Electric, Inc., supra* 527 F.2d at 398–399.

■ 23. Because § 4(a)(2) of the Portal to Portal Act relieves an employer from liability for failing to pay wages, whether regular or overtime, only for activities which are preliminary or postliminary to an employees principal activities, the court must determine whether the prerequisites for the incentive payments at issue are activities which are preliminary or postliminary to the employees principal activities.

Two "R" contends that the prerequisites for the attendance pay cannot be considered activities that are integral to the actual performance of Two "R's" principal activities, but rather are pre- and postliminary to the principal activity of drilling for hydrocarbons. Two "R" argues that an employee who appears promptly for boat transportation to an inland drilling barge, in a physically fit condition, with the necessary personal effects is only doing that which he is required to do in any event, as a preliminary matter, in preparation for the workweek. The additional requirements that an employee work his entire hitch and remain aboard the drilling barge during the seven day tour, it is argued, are not activities integral to drilling for hydrocarbons.

■ 24. The Court does not agree. Assuming, without deciding, that the time spent by a Two "R" employee (1) reporting to the "showup" dock on time, (2) refraining from alcohol and narcotics so that he will be physically fit to perform the work assigned, (3) assembling the personal attire, toiletries and other personal effects necessary for a seven day tour, and (4) remaining aboard the rig in between 12 hour shifts is exempt time under § 4(a)(2) of the Portal to Portal Act, the fact remains that the 84 hours spent working on the rig, a prerequisite for payment of the incentive pay, is time that is integral to the principal activity of drilling for hydrocarbons for which the Portal to Portal Act provides no exemption from the provisions of the FLSA. Because the payment at issue was conditioned as much on an employees working a full workweek as it was on the performance of these other arguably preliminary activities, it was not payment solely for preliminary activities for which there can be no FLSA liability. Consequently, the incentive payments at issue are not exempt from the regular rate by virtue of section 4(a)(2) of the Portal to Portal Act.

25. Having found that the incentive payment in question is not extra compensa-

tion excludable from the regular rate by virtue of § 7(e)(5) and that it is not compensation solely for preliminary or postliminary activities that would in effect be excludable from the regular rate by virtue of § 4(a)(2) of the Portal to Portal Act, the Court must determine whether it is excludable from the regular rate pursuant to § 7(e)(3)(a) of the FLSA pertaining to certain bonuses.

Section 7(e)(3)(a) excludes from the "regular rate"

> Sums paid in recognition of services performed during a given period if ... both the fact that payment is to be made and the amount of the payment are determined at the sole discretion of the employer at or near the end of the period and not pursuant to any prior contract, agreement, or promise causing the employee to expect such payment regularly ...

■ 26. By virtue of the unambiguous language of that section, an employer may not exclude a bonus from the regular rate for purposes of computing statutory overtime premium unless (1) the employer retains discretion as to the payment of the bonus until near the end of the period which it covers; (2) the employer retains discretion as to the amount of the bonus until near the end of the period which it covers; and (3) the employer does not pay the bonus pursuant to a prior contract, agreement, or promise. *See* Interpretative Bulletin of the Wage-Hour Administrator, 29 C.F.R. § 778.211 (persuasive authority).[4] If any one of the above conditions is not satisfied, a payment is not excludable from the regular rate by virtue of § 7(e)(3)(a).

■ 27. In this case, Two "R" satisfied none of the requirements of section 7(e)(3)(a). Two "R" had "informed" its employees that it would pay them a bonus equivalent to ten hours at time and one-half provided they completed a regularly scheduled tour of duty and met certain other conditions. The Court finds that Two "R" in fact promised the incentive pay to its employees, that it did not retain any discretion with respect to the amount or payment thereof, that a fixed level of performance, determined whether or not the bonus was paid, and consequently, that the attendance bonus is not excludable from the regular rate by virtue of § 7(e)(3)(a).

---

**4.** Section 778.211 provides, *inter alia:*

(b) *Discretionary character of excluded bonus.* In order for a bonus to qualify for exclusion as a discretionary bonus under section 7(e)(3)(a) the employer must retain discretion both as to the fact of payment and as to the amount until a time quite close to the end of the period for which the bonus is paid. The sum, if any, to be paid as a bonus is determined by the employer without prior promise or agreement. The employee has no contract right express or implied, to any amount. If the employer promises in advance to pay a bonus, he has abandoned his discretion with regard to it. Thus, if an employer announces to his employees in January that he intends to pay them a bonus in June, he has thereby abandoned his discretion regarding the fact of payment by promising a bonus to his employees. Such a bonus would not be excluded from the regular rate under section 7(e)(3)(a). Similarly, and employer who promises to sales employees that they will receive a monthly bonus computed on the basis of allocating one cent for each item sold whenever, in his discretion, the financial condition of the firm warrants such payments, has abandoned discretion with regard to the fact of payment. Such a bonus would not be excluded from the regular rate. On the other hand, if a bonus such as the one just described were paid without prior contract, promise or announcement and the decision as to the fact and amount of payment lay in the employer's sole discretion, the bonus would be properly excluded from the regular rate.

(c) *Promised bonuses not excluded.* The bonus, to be excluded under section 7(e)(3)(a), must not be paid "pursuant to any prior contract, agreement, or promise." For example, any bonus which is promised to employees upon hiring or which is the result of collective bargaining would not be excluded from the regular rate under this provision of the Act. Bonuses which are announced to employees to induce them to work more steadily or more rapidly or more efficiently or to remain with the firm are regarded as part of the regular rate of pay. Attendance bonuses, individual or group production bonuses, bonuses for quality and accuracy of work, bonuses contingent upon the employee's continuing in employment until the time the payment is to be made and the like are in this category. They must be included in the regular rate of pay.

*See Haber v. Americana Corp.,* 378 F.2d 854, 856 (9th Cir.1967).

28. Because Two "R" did not include the incentive payment in its employees regular rates as it was required to by law, Two "R" did not compensate its employees for overtime at the minimum rate required by section 7 and, therefore, is liable to its employees for back wages.

29. Apart from Two "R's" liability for back wages, the parties also dispute Two "R's" liability for liquidated damages, the applicability of prejudgment interest, the appropriate statute of limitations, and the propriety of prospective injunctive relief.

30. Section 16(b) of the FLSA, 29 U.S.C. § 216(b), provides that "any employer who violates the provisions of … section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages … and in an additional equal amount as liquidated damages." Under section 11 of the Portal to Portal Act, however, the Court in its discretion, may award a lesser amount of liquidated damages or none at all, "if the employer shows to the satisfaction of the Court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938." 29 U.S.C. § 260. *Barcellona v. Tiffany English Pub.,* 597 F.2d 464 (5th Cir.1979).

The parties stipulated that the sole evidence relative to defendants' purpose and intent in making the incentive payments is the testimony of defendants establishing:

(i) that their purpose was to comply with the provisions of the Fair Labor Standards Act of 1938, as amended;

(ii) that they had neither the objective nor subjective desire to evade the overtime requirements of the Fair Labor Standards Act of 1938; and

(iii) that they did not promulgate any device intended to be used to evade the overtime requirements of the aforementioned Act.

Because the sole evidence is that Two "R" attempted to comply with the FLSA in good faith, the Court in its discretion has determined that liquidated damages would not be appropriate in this case.

31. The Secretary also seeks prejudgment interest. It is well settled that pre-judgment interest should be allowed in section 17 cases on amounts found to be due even if the employer withheld these amounts in good faith. *Usery v. Associated Drugs, Inc.,* 538 F.2d 1191, 1194 (5th Cir.1976); *Brennan v. City Stores, Inc.,* 479 F.2d 235, 241–42 (5th Cir.1973). Consequently, the judgment will bear interest at the legal rate from the date that the wages withheld by Two "R" were due.

32. The Court has also determined that the three year statute of limitations applies to this action. The FLSA provides for a two year statute of limitations unless a "willful" violation is found, in which case the statute of limitations is three years. 29 U.S.C. § 255(a). In this Circuit "an employer acts willfully and subjects himself to the three-year liability provision if he knows, or has reason to know, that his conduct is governed by the Fair Labor Standards Act." *Brennan v. Heard,* 491 F.2d 1, 3 (5th Cir.1974), *Coleman v. Jiffy-June Farms, Inc.,* 458 F.2d 1139, 1142 (5th Cir.1971). It is undisputed that Two "R" was aware that its conduct was governed by the FLSA. *See* Stipulation No. 6. Consequently the three year statute of limitations governs.

33. Finally, the Court has decided that, although a restitutionary injunction should be issued in this case, a prospective injunction should not be issued. In this Circuit, the two factors to be considered in determining whether a permanent injunction should be granted are the previous conduct of the employer and the dependability of his promises for future compliance. *Dunlop v. Davis,* 524 F.2d 1278, 1281 (5th Cir.1975). On this record there is no indication that the defendants' acted in bad faith, that they have engaged in a pattern of conduct designed to evade the labor laws or that they have any inten-

tion of not complying with the provisions of the FLSA in the future. Under these circumstances, the Court feels that a prospective injunction is not warranted.

■ 34. The Court is not unmindful that its literal reading of section 7 of the FLSA and today's decision, requiring an employer to pay overtime on a bonus which it was not obligated to pay to its employees in the first place but which it did pay in good faith, may be viewed by some as harsh and unjust. Indeed, the Court feels that a literal reading of the statute under the circumstances of this case produces a result which the Congress could not have intended. Nevertheless, because the Court can find nothing in the language of the statute which vests the Court with the discretion to restrict the straightforward terms of section 7, the Court feels that the reasonably plain terms of the statute must be regarded as conclusive, no matter how hard or unexpected the particular effect. As the Supreme Court has said: "Laws enacted with good intention, when put to the test, frequently, and to the surprise of the lawmaker himself, turn out to be mischievious, absurd or otherwise objectionable. But in such case the remedy lies with the lawmaking authority, and not with the Courts." *Crooks v. Harrelson*, 282 U.S. 55, 51 S.Ct. 49, 50, 75 L.Ed. 156 (1930). If a literal reading of section 7 produces an unjust result in cases such as this one, then Congress may amend the statute; the Court may not.

Judgment shall be rendered accordingly.