James D. HODGSON, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

ELM HILL MEATS OF KENTUCKY, INC., Defendant.

No. 1821.

United States District Court, E. D. Kentucky, Lexington Division.

May 25, 1971.

Jeter S. Ray, Regional Atty., Office of the Solicitor, Nashville, Tenn., for plaintiff.

David T. Enlow and Edwin F. Schaeffer, Jr., of Kincaid, Wilson, Schaeffer, Trimble & Hembree, Lexington, Ky., Charles Hampton White, of Gullett, Steele, Sanford & White, Nashville, Tenn., for defendant.

## MEMORANDUM

SWINFORD, District Judge.

This is an action by James D. Hodgson, Secretary of Labor, United States Department of Labor, to enjoin the defendant, Elm Hill Meats of Kentucky, Inc., from violating the provisions of sections 6 and 7 of the Fair Labor

Standards Act of 1938 as amended (hereinafter the Act). Specifically the controversy involves the maximum hours provisions of section 7 of the Act. The plaintiff contends that the defendant has improperly withheld overtime wages due and owing to several of its employees. There is a claim that the defendant failed to pay one of its employees the statutory minimum wage for a period between November 6, 1965, and January 15, 1966, but this matter is not in dispute as the defendant has admitted that it violated the Act as to that particular employee.

The defendant, Elm Hill Meats of Kentucky, Inc., is a Kentucky corporation having its principal place of business in Kentucky. It is engaged in the business of meat packing and there is no dispute that it conducts business in interstate commerce so as to come within the terms of the Act.

The plaintiff alleges that the defendant has employed many of its employees in excess of 40 hours per week without compensating them for the additional hours at a rate of one and one-half times their regular rate of pay. The plaintiff further alleges that the defendant has failed to comply with section 11(c) of the Act, which requires employers to keep accurate and complete records of the hours worked by their employees, and also alleges that the defendant's wage payment system does not qualify for the fixed salary exception set out in section 7(f) of the Act.

It is the opinion of the court that injunctive relief must be granted and that the defendant must be enjoined from withholding wages due and owing to certain of its employees under the Act. In reaching this decision the court makes the following findings of fact and conclusions of law.

## Findings of Fact

1) This court has jurisdiction of the subject matter and of the parties.

2) Between June 5, 1965, and July 15, 1965, certain of the defendant's foremen or key employees were placed on a fixed weekly basis of pay. These employees were guaranteed a specified amount of pay for 55 hours of work per week. There has been no persuasive evidence offered that would indicate that these remunerative arrangements were made pursuant to section 7(f) of the Act. The agreements were not made in accordance with a collective bargaining agreement or in connection with bona fide individual contracts. Moreover it appears that the salary agreements only gave ostensive or token consideration to overtime hours. There has been no evidence introduced that would show that the employees were informed, in a manner as required by the Act, of what their regular rate (i. e. hourly rate) of pay was under their salary arrangements. Although there is some evidence in the form of pay check stubs that the salaries represented a regular rate of pay for 40 hours per week, plus overtime pay for 15 hours per week, the court finds that the salaries did not include actual overtime compensation.

3) The employees were furnished time cards, but it is not clear how the time cards were used by the defendant, as the employees were never paid more or less than their straight salary.

4) The time records which the defendant kept do not accurately reflect the actual hours each employee worked. Several of the defendant's employees have testified that they were admonished not to punch on their cards any hours in addition to 55 per week. Regardless of the reliability of these statements, it appears that the defendant consistently and arbitrarily totaled its employees' work time to equal 55 hours per week, although frequently the true total on the time cards was in excess of that figure. The court finds that the records kept by the defendant are not accurate, are not complete, are of very little value in determining whether the employees were properly compensated, and do not satisfy the requirements stated in section 11(c) of the Act.

5) The defendant argues that if the salaried employees did stay at the plant in excess of 10 hours a day, the additional time was not spent in working, but rather was spent in "bull sessions". The court finds that even though some of the additional time may have been spent in idle conversation, there is sufficient evidence to establish a just and reasonable inference that these employees frequently worked in excess of 55 hours per week, for which they did not receive regular or overtime compensation.

6) The court finds that between April 2, 1967, and July 15, 1967, the salaried employees were placed back on hourly rates of pay and were properly compensated for regular and overtime work.

7) A small number of the defendant's employees were paid for piecemeal work. These men were meat boners, butchers and delivery men. They were paid a specified amount for each side of beef they boned, or for each delivery trip they made. The meat boners were paid an hourly rate for other work which they did in addition to their piece rate work. Although an employee may, under the Act, be paid on a piece rate basis, his compensation must still conform to the minimum wage and maximum hours provisions of the Act. The court finds that it can be reasonably inferred, even though the defendant did not keep accurate time records for these men, that they often worked overtime hours for which they were not compensated at a rate equal to one and one half times their regular rate of pay.

8) Notwithstanding the fact that no accurate records exist as to the actual time worked by the employees involved in this litigation, the court finds that the preponderance of the evidence adduced establishes that each of these employees worked on the average of 60 hours per week.

The court makes the following conclusions of law based upon the foregoing findings of fact.

Conclusions of Law

1) *Purpose of the Maximum Hour Provision.* Section 7(a) of the Act reads in part as follows:

"(1) Except as otherwise provided in this section, no employer shall employ any of his employees ·who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

The purpose of this section is not related to the minimum wage section, which is to say section 7 was not intended as a means by which an employee's compensation could be regulated, but was rather intended to be a method by which employers could be discouraged from requiring their employees to work in excess of 40 hours per week. Congress believed that excessive working hours were injurious to an employee's mental, emotional and physical health and therefore drafted this section to deter employers from imposing extended working hours. In the landmark case of Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942), the Supreme Court determined that overtime pay was a proper method, under the commerce clause, to ameliorate the irritations caused by overtime work. The United States Court of Appeals for the Fifth Circuit, in speaking of the purpose of the maximum hour provision, stated in Nunn's Battery & Electric Co. v. Goldberg, 298 F.2d 516 (1962), that section 7(a) of the Act

"is more than a repetition of the minimum wage provisions. It has the separate and particular purpose of discouraging the employment of workers for more than forty hours a week. Compliance with the section requires

employers to establish a regular hourly wage and to pay one and one-half times that wage for each hour an employee works over forty hours within one week. The operative mechanism of the statute is the differential between the regular rate of pay and the overtime rate, since that is what compensates the employees for their having to work extra hours and that is what penalizes the employer for calling upon them to do so."

2) *General Requirements of the Maximum Hour Provision.* In order for an employer to satisfy the requirements of section 7(a) it must specify a regular rate of pay for each employee from which that employee's overtime pay may be computed, and it must keep accurate and complete records of each employee's working time. The Court in Nunn's Battery & Electric Co. v. Goldberg, *supra*, noted that there are two indispensable factors for compliance with the maximum hours provision of the Act.

"(1) an explicit understanding between the parties as to the existence of a regular wage rate that is stepped up for overtime hours and (2) a careful practice of recording the hours worked overtime by each employee and paying him for them at the increased rate."

This court concludes that the defendant failed, under its salary payment system for its key employees, to meet these two requirements, and thereby failed to comply with the Act.

3) *Fixed Salary Exception.* Section 7(f) of the Act which reads as follows, regulates overtime compensation for salaried employees:

"No employer shall be deemed to have violated subsection (a) by employing any employee for a workweek in excess of the maximum workweek applicable to such employee under subsection (a) if such employee is employed pursuant to a bona fide individual contract, or pursuant to an agreement made as a result of collective bargaining by representatives of employees, if the duties of such employee necessitate irregular hours of work, and the contract or agreement (1) specifies a regular rate of pay of not less than the minimum hourly rate provided in subsection (a) or (b) of section 6 (whichever may be applicable) and compensation at not less than one and one-half times such rate for all hours worked in excess of such maximum workweek, and (2) provides a weekly guaranty of pay for not more than sixty hours based on the rates so specified."

Under this section of the Act it is clear that there must be either an individual written contract between the employer and employee explicitly stating a regular rate and an overtime rate of pay, or an agreement made as a result of collective bargaining which also includes regular and overtime pay provisions. Although the validity of such a wage or salary contract must be determined by the facts of the individual case, McComb. v. Sterling Ice & Cold Storage Co., 165 F.2d 265 (10 Cir., 1947), normally an oral agreement, such as the one the defendant in this case had with its employees, will not adequately comply with the Act. The agreements between the defendant and its employees made no express stipulations as to regular and overtime rates of pay. The defendant contends that it told its employees that each of their salaries would include regular and overtime rates of pay, but the Act requires more than an oral statement. In Nunn's Battery & Electric Co. v. Goldberg, *supra*, the Court of Appeals found that the oral agreement by which the defendant in that case paid its employees a fixed weekly salary did not comply with the Act as the agreement covered all hours indiscriminately. A mere assertion that a weekly wage or fixed salary includes payment for both regular and overtime work does not satisfy the requirements of the Act, even where the weekly wage exceeds the statutory minimum for straight time and overtime hours. Walling v. Stone, 131 F.2d 461 (7 Cir. 1942).

The court concludes that the defendant's fixed salary agreements did not meet the requirements of the Act.

■ 4) *Overtime Hours Within the Salary Agreement.* The employees who worked under the fixed salary agreements are entitled to overtime compensation for the overtime hours they worked as a part of those agreements, i. e. overtime pay for 15 of the 55 hours for which the fixed salary was paid. This amount will equal an additional one half of their regular rate for each of the 15 hours. The employees in this case have already received their regular rate of pay for the 15 hours, so they are only entitled to an additional one half of their regular rate for those hours. Section 778.114 of Interpretative Bulletin, Title 28, Part 778, Overtime Compensation states in regard to fixed salaries that:

> "Payment for overtime hours at one-half such rate (regular rate) in addition to the salary satisfies the overtime pay requirement because such hours have already been compensated at the straight time regular rate, under the salary arrangement."

Section 778.325 of the Bulletin includes the following example:

> "If an employee whose maximum hours standard is 40 hours was hired at a fixed salary of $110 for 55 hours of work (a regular rate of $2 per hour), he was entitled to a statutory overtime premium for the 15 hours in excess of 40 at the rate of $1 per hour (half-time) *in addition* to his salary, and to statutory overtime pay of $3 per hour (time and one-half) for any hours worked in excess of 55."

In Triple "AAA" Company v. Wirtz, 378 F.2d 884 (10 Cir. 1967), the Court found that several of the defendant's employees, who had been paid a fixed salary for 44 hours of work per week, had not been properly compensated for overtime work. The Court decided that the trial court had correctly used the following method to determine the amount of wages wrongfully withheld:

> "For purposes of computing overtime compensation to be recovered by the four employees, and to compute the statutory 'regular rate' of compensation, the trial court found, and the employer agreed, that each employee had worked at least an average of forty-four hours per week. The trial court computed the overtime compensation by taking the monthly salary times twelve months and then dividing by fifty-two weeks. This figure represents the weekly compensation. The weekly compensation was then divided by forty-four hours, the number of hours the weekly salary was meant to compensate. The resulting figure is the hourly 'regular rate' for forty-four hours. Because the employees had already received the 'regular rate' for the four overtime hours, as computed above, the trial court added one-half the regular rate to the four overtime hours for each week. We find no error in the trial court's method of computing overtime compensation to be recovered from the employer."

The regular or straight time rate of each employee in this case would be found by dividing his agreed hours (55) into his fixed weekly salary. The court concludes that each employee is entitled to recover one-half of this figure for each of the 15 hours he worked every week as a part of his salary agreement.

■ 5) *Overtime Hours in Addition to Those Worked Within the Salary Agreement.* The court has found that the defendant did not keep accurate time records and has concluded that it thereby violated section 11(c) of the Act. See finding of fact 4). In conjunction with this mixed finding of fact and conclusion of law the court has found that a preponderance of the evidence shows that the employees on fixed salaries worked an average of 60 hours per week, or 5 hours more than required by their salary agreements for which they received no compensation. The court concludes that the defendant has wrongfully withheld compensation for these addi-

tional hours and concludes that these employees are, pursuant to the provisions of section 7 of the Act, entitled to their regular rate of pay plus one half of their regular rate of pay for each of their overtime hours in excess of 55.

■ The defendant has argued that the evidence does not categorically prove that its fixed salaried employees worked over 55 hours per week. Such an argument is, of course, technically correct, as the absence of precise records renders it impossible to absolutely prove the exact number of hours actually worked. However, where there is an absence of adequate records, the government may show by reasonable and just inferences that certain employees have worked overtime hours for which they have not been properly compensated. Once these inferences are raised the burden of proof shifts to the defendant who must then "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference drawn from the (Secretary's) evidence." Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1945); see also Shultz v. Tarheel Coals, Inc., 417 F.2d 583 (6 Cir. 1969); and Wirtz v. McClure, 333 F.2d 45 (10 Cir. 1964). It is the judgment of this court that the plaintiff has raised reasonable inferences as to the amount of time actually worked which the defendant has failed to disprove.

■ 6) *Piece Rate Workers*. The court concludes that the employees of the defendant who were compensated at a piece rate did not receive overtime compensation for the hours they worked in excess of 40 hours per week. See findings of fact 7) and 8). The fact that an employee is hired on a piece rate basis does not exempt his employer from the overtime provisions of section 7 of the Act. Walling v. Harnischfeger Corp., 325 U.S. 427, 65 S.Ct. 1246, 89 L. Ed. 1711 (1945). Section 778.111 of the Interpretative Bulletin on Overtime Compensation explains how a pieceworker's overtime is to be calculated:

"(a) When an employee is employed on a piece-rate basis, his regular hourly rate of pay is computed by adding together his total earnings for the workweek from piece rates and all other sources (such as production bonuses) and any sums paid for waiting time or other hours worked (except statutory exclusions). This sum is then divided by the number of hours worked in the week for which such compensation was paid, to yield the piece-worker's 'regular rate' for that week. For his overtime work the piece-worker is entitled to be paid, in addition to this total weekly earnings at this regular rate for all hours worked, a sum equivalent to one-half this regular rate of pay multiplied by the number of hours worked in excess of 40 in the week."

The court concludes that the defendant's piece rate workers are entitled to overtime compensation for each of the hours they worked in excess of 40 per week. These withheld wages should be computed in a manner not unlike that described above.

■ 7) *Minimum Wage Violation*. As stated in the preface of this memorandum, the plaintiff has charged and the defendant has admitted that it failed to pay one of its employees the statutory minimum wage as specified in section 6 of the Act, between November 6, 1965, and January 15, 1966. The statutory minimum for that period of time was $1.25. The court concludes that that employee is entitled to an amount equal to the difference of what he was actually paid for that period and what he should have been paid for that period.

■ 8) It is the court's summary conclusion that the defendant has violated sections 6, 7, 11(c) and 15(a) (1) of the Act and the plaintiff is entitled to injunctive relief to enjoin the defendant from withholding minimum and overtime wages due and owing to certain of the defendant's employees. An order to that effect will this day be entered.