MARTIN P. CUEVAS, Plaintiff-Appellant and Cross-Appellee, v. BILL TSAGALIS, INC., Defendant-Appellee and Cross-Appellant.

Second District No. 85—0453

Opinion filed November 18, 1986.

Scott A. Kracen, of Mays & Kracen, of Sycamore, for appellant.

Richard J. Turner, Jr., of Burns, Cronauer & Turner, of De Kalb, for appellee.

JUSTICE STROUSE delivered the opinion of the court:

This action was brought to recover damages for defendant's alleged failure to pay federally mandated minimum wages. The trial court, after a bench trial, entered judgment for the plaintiff in the amount of $5,296.44 plus costs. Plaintiff timely appealed and defendant cross-appealed, both challenging the amount of the award.

Plaintiff was employed as a busboy by defendant's restaurant, the Junction Eating Place, in DeKalb. He worked there from August 25, 1980, through January 10, 1982, and then again from April 5, 1982, through July 10, 1983.

After being terminated by defendant, plaintiff filed a two-count complaint. Count I sought damages under the Minimum Wage Law (Ill. Rev. Stat. 1981, ch. 48, par. 1001 *et seq.*). Count II sought damages under the Fair Labor Standards Act of 1938, as amended (FLSA or Act) (29 U.S.C.A. sec. 201 *et seq.* (West 1978)). Plaintiff prayed for an order of the court demanding an accounting of the defendant, an equal amount as liquidated damages, prejudgment interest, court costs, and reasonable attorney fees.

The parties agree that their employment agreement was sketchy and consisted of the following terms: $300 every two weeks, $40 in tips every two weeks, and two meal breaks per day. At trial, plaintiff testified that he regularly worked from 7 a.m. until 5 p.m. seven days a week, for a total of 70 hours per week, and that he took one half-hour meal break each day. Plaintiff stated that he "would eat one meal, maybe two, maybe not at all because it would depend on how busy that we were" and that the meal breaks he did take were 20 to 25 minutes long. On cross-examination, plaintiff admitted that if "everybody was slowed down" he would then take a break of 30 to 35 minutes. Therefore, according to his calculations, he worked 66½ hours each week.

Angelo Tsagalis, an officer and managing agent of defendant, testified that plaintiff took two 45-minute meal breaks daily and that plaintiff only worked a total of 8½ hours per day, or 59½ hours a week. Gus Bahramis, another officer of the corporation, indicated that he knew that plaintiff took two 45-minute meal breaks per day. He admitted on cross-examination, however, that he did not come to work until 6:30 or 7 p.m. and worked a shift which plaintiff did not work.

Plaintiff claimed that he should be compensated for approximately 136 weeks. His complaint sought damages for defendant's violations of the Act which dated back to September 16, 1980. Having filed this action on September 16, 1983, plaintiff contended that in spite of the two-year statute of limitations, a three-year period of recovery is

proper under the statute since the defendant's violations were wilful. Defendant argued that its acts were not wilful under the Act and that the two-year limitation should apply.

Employers are allowed, under the Act, to include the reasonable cost of meals provided to an employee as a component in satisfying his wage obligations owed to that employee. Defendant did not keep any written records of the number of meals plaintiff ate, the time of such meals, what plaintiff ate, or the reasonable cost of such meals. Plaintiff testified that he ate, on the average, one meal per day. Defendant testified that he estimated the retail value of the meals provided to the plaintiff at $10 or $11 per meal. The only evidence concerning meal value appears on plaintiff's paycheck stubs. Each biweekly check stub shows a block with the designation "M" and the number "10" within. Angelo Tsagalis testified that this notation was only for tax purposes and was not a correct indication of the value of the meals actually eaten by plaintiff.

Defendant also sought credit for lodging provided to the plaintiff. He claimed he expended $6,289.99 on an apartment in which he housed plaintiff. Plaintiff contended defendant should receive no credit since (1) this arrangement was not agreed to in their employment agreement; (2) the records which supported this were nonexistent; (3) the occupancy of the apartment was irregular; (4) the amount which defendant claims includes figures for months when plaintiff did not work for defendant; and (5) plaintiff contributed from his own funds to pay for this housing. It is undisputed that plaintiff did, at various times, live in an apartment provided by defendant. However, defendant kept no records of who lived in the apartments or how many people lived there at any particular time. Finally, plaintiff and defendant never had any agreement concerning housing or a figure for its cost.

Defendant also sought credit for tips which plaintiff earned at defendant's restaurant. Plaintiff resisted by claiming that (1) he was never notified when he and defendant created their employment agreement that tips were to be credited to minimum wages, and (2) defendant's failure to keep accurate records of plaintiff's tips precludes defendant from now claiming them toward his minimum-wage obligations. Plaintiff admits receiving from defendant, on occasion, a portion of the tips pooled by the waitresses, but the amount of the tips is in dispute. Defendant testified that from August 1980 until late in 1982, he kept plaintiff's tips to pay for housing but kept no records of any tips received or the amount received. Plaintiff's yearly W-2 statements did not reflect any income from tips in the appropriate

blank.

On May 31, 1985, the trial court issued its order. The court found, *inter alia*, that (1) the two-year statute of limitations was applicable; (2) that plaintiff was not entitled to liquidated damages because the defendant met its burden by showing that its acts or omissions were in good faith and that it had reasonable grounds for believing that it was not in violation of the FLSA; (3) that defendant was not entitled to any credit for the tips received by plaintiff; (4) that defendant was not entitled to any credit for lodging paid on behalf of plaintiff; (5) that plaintiff received one hour per day as a lunch break; (6) that defendant was entitled to a meal credit in the amount of $6 per day; and (7) that plaintiff should be awarded the sum of $5,296.44 (which was based on a 56-hour work week) plus costs. The court denied plaintiff's claim for prejudgment interest and attorney fees.

On June 6, 1985, plaintiff filed his notice of appeal. Defendant cross-appealed on June 10, 1985, seeking to vacate the order entered by the trial court and enter judgment for defendant or, in the alternative, to reverse the judgment and remand the cause with directions for a new trial.

Plaintiff argues that the result of the trial court is against the manifest weight of the evidence. He first attacks the finding of the court that he worked only nine hours per day. He claims that since defendant failed to keep the appropriate records, the court should have found that his testimony of his work times and lunch breaks was conclusive. We disagree. Section 211(c) of the Act (29 U.S.C.A. sec. 211(c) (West 1965)), requires the employer to keep various records concerning an employee's employment. (See *Brennan v. Valley Towing Co.* (9th Cir. 1975), 515 F.2d 100, 111.) Section 516.2 of the Code of Federal Regulations (the regulations) (29 C.F.R. sec. 516.2 (1981)), promulgated pursuant to the Act, requires the employer to record, among other items, the time on which the employee's workday begins and the hours worked each day and the total hours worked each workweek. By estimating, rather than keeping accurate records of hours worked, the defendant violated record-keeping requirements. *Williams v. Tri-County Growers, Inc.* (3d Cir. 1984), 747 F.2d 121, 128.

When a defendant fails to keep proper records, the plaintiff can prove his case by testimony sufficient to show the amount and extent of his work as a matter of just and reasonable inference. In *Anderson v. Mt. Clemens Pottery Co.* (1946), 328 U.S. 680, 90 L. Ed. 1515, 66 S. Ct. 1187, the Supreme Court faced the situation of an employee's inability to meet his burden of proof regarding the specific number of

hours worked because the employer had kept little or no records. The court stated that normally the employee has the burden of proving that he performed work for which he was not properly compensated. However, when the employer keeps inadequate records, the employee need only introduce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." (328 U.S. 680, 687, 90 L. Ed. 1515, 1523, 66 S. Ct. 1187, 1192.) The court explained:

> "When the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records. But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises. The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act. In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." (328 U.S. 680, 687-88, 90 L. Ed. 1515, 1523, 66 S. Ct. 1187, 1192.)

The regulations require employers to keep a primary set of records, which should include, *inter alia*, the "[h]ours worked each workday" (29 C.F.R. sec. 516.2(a)(7) (1981)), and supplementary records, which should include the "daily starting and stopping time of individual employees." (29 C.F.R. sec. 516.6(a)(1) (1981)). It is undisputed that defendant did not keep such records. Therefore, plaintiff was entitled to produce sufficient evidence to show the extent and amount of such work as a matter of just and reasonable inference. (See *Williams v. Tri-County Growers, Inc.* (3d Cir. 1984), 747 F.2d 121; *Wirtz v. Lieb* (10th Cir. 1966), 366 F.2d 412.) The only evidence introduced on this

matter was plaintiff's testimony that he would take one meal break per day of no more than one-half hour. In *Williams v. Tri-County Growers, Inc.* (3d Cir. 1984), 747 F.2d 121, the testimony of the plaintiffs (migrant workers and their crew leader) was found sufficient to support a reasonable inference of hours worked and was sufficient to shift the burden to Tri-County to negate the inference. The court noted that the testimony of plaintiffs can be sufficient to satisfy the burden *Anderson* imposes on the employees. (See also *Marshall v. VanMatre* (8th Cir. 1980), 634 F.2d 1115, 1119; *Mitchell v. Williams* (8th Cir. 1969), 420 F.2d 67, 70-71.) This, however, does not dispose of the issue. Plaintiff's evidence does not create an unrebuttable presumption. The defendant is entitled to present testimony which may overcome plaintiff's evidence. In *Marshall v. Truman Arnold Distributing Co.* (8th Cir. 1981), 640 F.2d 906, the court found that the Secretary of Labor had presented sufficient evidence to meet the employee's initial burden but that the company substantially rebutted the evidence. It awarded less than half of the amount claimed. 640 F.2d 906, 911.

■ In its order of May 31, 1985, the trial court stated that "while the evidence presented is in dispute as to the amount of time for meal breaks during the working day, the Court finds that the plaintiff received one hour per day as a lunch break." We find that the trial court's decision was not manifestly erroneous.

■ Next, defendant contends that he presented sufficient evidence to establish an entitlement to a lodging and utility credit in the amount of $6,289.99. The regulations provide that the reasonable cost of lodging and other facilities may be considered as part of the wages paid to an employee where customarily furnished to him. 29 C.F.R. secs. 531.30, 531.31, 531.32 (1981).

Defendant relies on *Marshall v. Truman Arnold Distributing Co.* (8th Cir. 1981), 640 F.2d 906, and *Lopez v. Rodriguez* (D.C. Cir. 1981), 668 F.2d 1376, which, he claims, support his position. In *Truman Arnold Distribution Co.*, the employer presented evidence to establish that it was providing a rent-free apartment to four employees who worked at its 24-hour gasoline station. The trial court granted defendant a $300 monthly credit. In *Lopez*, the court found that the trial court erred in denying the defendant employers any credit for board and lodging furnished to their Spanish-speaking live-in housekeeper. The court found that the board and lodging furnished to the employee was accepted by the employee voluntarily and understood to be a part of her compensation. 668 F.2d 1376, 1380.

Angelo and Tom Tsagalis and Gus Bahramis each testified that

the plaintiff was housed in various apartments paid for by the restaurant. This housing would be paid for with the tips from the employees' "tip pool." Plaintiff admitted that there was a time when the restaurant was paying some of his rent and a time when he started getting tips in cash amounting to $40 every two weeks. Defendant claimed to have furnished plaintiff with housing from the time of his initial hiring until he decided to move out on his own in October 1982. At that time, defendant began paying plaintiff his tips in cash on a biweekly basis.

The evidence of lodging costs consisted of cancelled checks for rent and utilities and a general ledger sheet indicating payments for rent and utilities on the apartment furnished to the busboys. The sum of the exhibits and testimony presented totalled $5,105 for rent and $1,184.99 for utilities between the time of plaintiff's initial hiring and when he began receiving his payment of tips in cash. Defendant argues that the trier of fact needed only to divide the total rental and utility payments by four (the number of residents) and divide that over the number of weeks involved to come to a final weekly rate for the wage credit.

We cannot agree. In the first place, the defendant's claims for $5,105 in rent and $1,184.99 in utilities for the period from August 25, 1980, to October 25, 1982, are in error. Simple addition of the individual checks totals $6,075.15, and not $6,289.99. Furthermore, the checks clearly comprise payments for periods during which plaintiff did not work for defendant. Section 203(m) of the Act allows employers to include the reasonable cost of providing lodging or other facilities in employee wages for the purpose of the Act. The regulations require employers to keep certain records of the cost incurred in furnishing lodging (29 C.F.R. sec. 516.27(a) (1981)) and that the employer maintain records showing additions or deductions from wages paid for lodging or other facilities on a workweek basis (29 C.F.R. sec. 516.28(b) (1981)).

Clearly, defendant failed to keep the type of records called for by the regulations. While this case may have some facts similar to *Marshall v. Truman Arnold Distributing Co.* (8th Cir. 1981), 640 F.2d 906, there is at least one major difference. In *Truman Arnold Distributing Co.* there was evidence that when the employment contracts were signed by the employer and employees, a specific value for living quarters was mutually agreed upon. (640 F.2d 906, 909; see *Donovan v. Williams Chemical Co.* (8th Cir. 1982), 682 F.2d 185, 190.) This element was significant to the outcome in that case and is absent in the instant case. *Lopez v. Rodriguez* (D.C. Cir. 1981), 668 F.2d 1376, is

likewise inapposite since that court was resolving the issue of whether the employee's acceptance of the employment arrangements was coerced. The court determined her acceptance of the position was voluntary and, more importantly, she understood her board and lodging would be part of her compensation package. (668 F.2d 1376, 1381.) Here, (1) the evidence did not establish that plaintiff understood that the lodging expenses would be part of his compensation package and was to the contrary; (2) the defendant failed to maintain any of the statutory records reflecting the reasonable cost to the plaintiff's actual lodging; (3) there was unrefuted testimony by the plaintiff which demonstrated that the occupancy of the furnished apartment was irregular; (4) some of the costs which defendant claimed for plaintiff's lodging occurred during a period of time when plaintiff did not work for defendant; and (5) there was testimony to the effect that plaintiff and his roommates each contributed to the manager of the apartment complex for their own rent expenses. In view of this, it was not erroneous for the trial court to deny defendant any credits for the lodging expenses.

Plaintiff next argues that the trial court erred in awarding defendant a credit of $6 a day for meals. We agree. Section 203(m) of the Act allows an employer a credit for the "reasonable cost *** to the employer of furnishing [an] employee with board *** if such board *** [is] customarily furnished by such employer to his employees." (29 U.S.C.A. sec. 203(m) (West 1978).) This reasonable cost is "to be not more than the actual cost to the employer." (29 C.F.R. sec. 531.3(a) (1981).) It "does not include a profit to the employer or to any affiliated person." (29 C.F.R. sec. 531.3(b) (1981).) The regulations require employers to keep certain records of the cost incurred in furnishing such board and further require the employer to maintain, on a workweek basis, records reflecting additions to wages or deductions from wages for such meals. (29 C.F.R. sec. 516.28(b) (1981).) The burden of proving the reasonable cost of the meals is on the employer. *Donovan v. Williams Chemical Co.* (8th Cir. 1982), 682 F.2d 185, 190; *Donovan v. New Floridian Hotel, Inc.* (11th Cir. 1982), 676 F.2d 468, 474.

In *New Floridian Hotel, Inc.*, the employer appealed the trial court's ruling that he was not entitled to any credit for meals which he provided to his employees. He had offered three pieces of evidence to support his cost of the meals and lodging: (1) testimony of the principal officer of the corporation, who estimated the cost of lunch to be $1 and dinner to be $2; (2) evidence that the hotel provided hot meals to a certain nonprofit organization at a price of $1.379 per meal; and (3) testimony of one of the hotel's managers as to the price charged to

nonemployees for one month's room and board at the facility. (676 F.2d 468, 475-76.) No evidence was introduced as to the profit to the employer for providing the latter two services. The court concluded that this evidence was not sufficient to establish a reasonable cost. The court stated:

> "[A]n employer's unsubstantiated estimate of his cost, where the employer has failed to comply with the recordkeeping provisions of the FLSA, and where there has been no determination of reasonable cost by the Wage and Hour Division, does not satisfy the employer's burden of proving reasonable cost." (676 F.2d 468, 475 citing *Marshall v. DeBord* (E.D. Okla. 1978), 84 Lab. Cas. (CCH) par. 33,721, at 48,476.)

This result has been reached by various other courts. See *Marshall v. DeBord* (E.D. Okla. 1978), 84 Lab. Cas. (CCH) par. 33,721, at 48,476 (where the court found that the defendant had not produced records or other evidence to establish the reasonable cost of providing the board, lodging, or other facilities, it denied credit); *Morgan v. Atlantic Coast Line R. Co.* (S.C. Ga. 1940), 32 F. Supp. 617 (where the court disallowed the value of housing facilities provided to employees because the employer gave no evidence to show the reasonable or actual cost of the facility); see also *Brennan v. Veterans Cleaning Service, Inc.* (5th Cir. 1973), 482 F.2d 1362 (where employer had tendered evidence as to cost of board, lodging, and other facilities, but failed to segregate the profit from the actual cost, the court found defendant was not entitled to claim any credit).

In the instant case, the trial court had before it no testimony other than the unsubstantiated estimate of Angelo Tsagalis that he was daily crediting plaintiff for meals valued at $10. The only other evidence concerning the value of plaintiff's meals appeared on plaintiff's paycheck stubs. An annotation was placed in the box indicating meal credits of $10 every two weeks. Defendant testified that this was an erroneous indicator of meal value which it had inherited from the previous owner's bookkeeping system. While defendant's accountant testified as to the profit margin of defendant's entire operation, none of the testimony directly related to any of the meals which plaintiff consumed. We conclude, therefore, that the trial court's allowance of a meal credit of $6 was manifestly in error. No credit should have been allowed.

Defendant next contends that the trial court improperly denied him credit for plaintiff's tips. He argues that an employer is entitled to a credit toward wages for tips provided he has so informed the employee or posted a sign to that effect, citing *Marshall v. Tiffany En-*

*glish Pub, Inc.* (5th Cir. 1979), 597 F.2d 464 [*sic*] (apparently intending to cite *Barcellona v. Tiffany English Pub, Inc.* (5th Cir. 1979), 597 F.2d 464). The regulations allow for a credit to the employer provided that the employee receives more than $20 per month in tips. (29 C.F.R. secs. 531.5, 531.6 (1981).) In the case at bar, plaintiff admitted that when he moved out of the last apartment on approximately October 25, 1982, he began to receive his full $40 credit in cash tips.

However, we disagree with defendant and find the trial court's denial of a tip credit was proper. Two factors defeat defendant's arguments: (1) he failed to notify plaintiff of the specific provisions of section 203(m) of the Act and their application as to credits toward minimum-wage requirements; and (2) he failed to keep the requisite records for this employee.

A basic prerequisite to obtaining tip credit is that the defendant comply with the provisions of section 203(m) of the Act. That section reads:

> "In determining the wage of a tipped employee, the amount paid such employee by his employer shall be deemed to be increased on account of tips by an amount determined by the employer, but not by an amount in excess of 50 per centum of the applicable minimum wage rate ***."

The last line of that provision reads:

> "The previous sentence shall not apply with respect to any tipped employee unless (1) such employee has been informed by the employer of the provisions of this subsection ***." 29 U.S.C.A. sec. 203(m) (West 1978).

First, the evidence shows that in their employment agreement the parties agreed that defendant would receive $40 in tips every two weeks. The terms of the agreement were very limited and very specific, but it is clear that nowhere did defendant inform plaintiff that defendant would be receiving a tip credit to offset his minimum-wage obligations to plaintiff. The tip credit does not turn on whether plaintiff actually received the tips, but on whether defendant statutorily met the notice requirements of the Act. In *Richard v. Marriott Corp.* (4th Cir. 1977), 549 F.2d 303, *cert. denied* (1977), 433 U.S. 915, 53 L. Ed. 2d 1100, 97 S. Ct. 2988, the court stated that the statute allows a restaurant employer a tip credit only if it precisely followed the language of section 203(m). The court stated that "[t]he corollary seems obvious and unavoidable: if the employer does not follow the command of the statute, he gets no credit." 549 F.2d 303, 305; see also *Marshall v. Gerwill, Inc.* (D. Md. 1980), 495 F. Supp. 744, 753 ("Defendants cannot invoke these provisions without satisfying the

clear requirements of prior notice to the employees"); *Bonham v. Copper Cellar Corp.* (E.D. Tenn. 1979), 476 F. Supp. 98, 101 (court disallowed any tip credit despite the employees' admission that their actual income, including tips, greatly exceeded the minimum wage because, *inter alia,* the employer had not informed plaintiffs of the tip-credit provisions, in spite of the fact that the court found that the defendants were not in bad faith; the court noted that "good faith cannot waive the requirements of the Act"); see also *Barcellona v. Tiffany English Pub, Inc.* (5th Cir. 1979), 597 F.2d 464, 467.

Secondly, section 516.28 of the regulations requires that the employer maintain and preserve the following records for a tipped employee:

> "(1) A symbol or letter placed on the pay records identifying each employee whose wage is determined in part by tips.
>
> (2) Weekly or monthly amount reported by the employee, ***.
>
> (3) Amount by which the wages of each tipped employee have been deemed to be increased by tips as determined by the employer ***.
>
> (4) Hours worked each workday *** in which the employee does not receive tips, and a total daily or weekly straight-time payment made by the employer for such hours.
>
> (5) Hours worked each workday *** in which the employee receives tips, and total daily or weekly straight time earnings for such hours." (29 C.F.R. sec. 516.28 (1981).)

In *Bingham v. Airport Limousine Service* (W.D. Ark. 1970), 314 F. Supp. 565, the court indicated that when the employer fails to follow the record-keeping requirements of the Act, "the penalty for such an omission must fall upon the employer and not upon his employees." 314 F. Supp. 565, 572.

Plaintiff's exhibit No. 2, the computer payroll record of defendant's employees, contains an area marked "Factors" which contains a subsection entitled "Tip." Another line contains a block marked "Y-T-D Tips." These records reflect no entries in either of these two blocks. However, these sections reflect entries in both of these blocks for some employees. Similarly, plaintiff's exhibit No. 3 shows plaintiffs' W-2 statements for the years 1980 and 1983. Also included on this statement are the W-2's of two other employees. Block 14 on these forms is entitled "FICA Tips." A comparison for each year shows that while this block is filled in for other employees, plaintiff's block is blank. Clearly, the defendant was aware of the reporting requirements and was using payroll and tax forms calling for the infor-

mation required. He complied with such reporting requirements for other employees, but in plaintiff's case, he completely failed to keep the same records or information. For these two reasons, we find that the trial court's ruling denying the defendant any credit for tips was not in error.

The next issue concerns the question of liquidated damages. Plaintiff contends that the trial court's denial of liquidated damages was in error. We agree. Section 216(b) of the Act provides that any employer who violates the minimum-wage or maximum-hour provisions of the Act "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." (29 U.S.C.A. sec. 216(b) (West 1965).) Under the Act, liquidated damages are compensatory, not punitive in nature. (*Marshall v. Brunner* (3d Cir. 1982), 668 F.2d 748, 753.) Congress provided for liquidated damages to compensate employees for losses they might suffer by reason of not receiving their lawful wage at the time it was due. (*Overnight Motor Transportation Co. v. Missel* (1942), 316 U.S. 572, 583-84, 86 L. Ed. 1682, 1690-91, 62 S. Ct. 1216, 1222.) In 1947, upon the enactment of section 11 of the Portal-to-Portal Act of 1947 (29 U.S.C.A. sec. 260 (West 1985)), Congress provided employers with a defense to the mandatory provision of section 216(b). This defense provides that the court has discretion to award no liquidated damages or an amount of liquidated damages less than the amount provided by section 216(b) of the Act, "*if, and only if,* the employer shows that he acted in good faith and that he had reasonable grounds for believing that he was not violating the Act." (Emphasis in original.) (*Marshall v. Brunner* (3d Cir. 1982), 668 F.2d 748, 753.) The employer has the "plain and substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict." (*Rothman v. Publicker Industries, Inc.* (3d Cir. 1953), 201 F.2d 618, 620; see also *Williams v. Tri-County Growers, Inc.* (3d Cir. 1984), 747 F.2d 121, 129.) In the absence of such a showing, the court has no discretion to mitigate an employer's statutory liability for liquidated damages. (*McClanahan v. Mathews* (6th Cir. 1971), 440 F.2d 320, 322; see also *Williams v. Tri-County Growers, Inc.* (3d Cir. 1984), 747 F.2d 121, 129; *Marshall v. Brunner* (3d Cir. 1982), 668 F.2d 748 752-54.) Furthermore, the court must make findings, as a "prerequisite to the invocation of its discretion," that the employer acted in good faith and with reasonable grounds. (*Guthrie v. Lady Jane Collieries, Inc.* (3d Cir.

1983), 722 F.2d 1141, 1149.) Once the court makes a finding of fact as to the good-faith and reasonable-grounds prongs of this test, a court may disturb the trial court's findings only if it is clearly erroneous. *Laffey v. Northwest Airlines, Inc.* (D.C. Cir. 1976), 567 F.2d 429, *cert. denied* (1978), 434 U.S. 1086, 55 L. Ed. 2d 792, 98 S. Ct. 1281.

The Seventh Circuit has adopted the following approach:

> "The right standard is the one in the statute: whether the employer's conduct—objectively viewed through the lens of the 'reasonable man' famous in tort law—acted 'in good faith and *** had reasonable grounds for believing that his act or omission was not a violation' of the FLSA. A good heart but an empty head does not produce a defense; objective criteria are highly valued here as in other inquiries into 'good faith,' not the least because corporations such as United do not have subjective mental states." *Walton v. United Consumers Club, Inc.* (7th Cir. 1986), 786 F.2d 303, 312.

We find that the trial court's finding that defendant met its burden under section 260 "by showing that its acts or omissions giving rise to this action were in good faith and that it had reasonable grounds for believing that its acts or omissions were not a violation of the FLSA" is manifestly in error.

The record reflects that defendant attempted to come forward with evidence reflecting his good-faith belief that he was in compliance with the Act. Angelo and Tom Tsagalis each testified that they felt they had complied with the Act. However, this belief is not sufficient since knowledge of the Act and its obligations is imputed. (See *Reeves v. International Telephone & Telegraph Corp.* (5th Cir. 1980), 616 F.2d 1342, 1353, *cert. denied* (1981), 449 U.S. 1077, 66 L. Ed. 2d 800, 101 S. Ct. 857.) The court in *Barcellona v. Tiffany English Pub, Inc.* (5th Cir. 1979), 597 F.2d 464, held that the good-faith requirement includes the duty to investigate potential liability under the Act and that ignorance of the statute is never a basis of reasonable belief. (597 F.2d 464, 469.) Additionally, in *Dunlop v. Gray-Goto, Inc.* (10th Cir. 1976), 528 F.2d 792, 796, the court indicated that the employer cannot rely on a good-faith defense when it fails to meet the recordkeeping requirements of the Act. (See also *Hodgson v. Elm Hill Meats of Kentucky, Inc.* (E.D. Ky. 1971), 327 F. Supp. 1009, 1014, *aff'd* (6th Cir. 1972), 463 F.2d 1186; *Walling v. Stone* (7th Cir. 1942), 131 F.2d 461, 463.) Section 516.2(a) of the regulations requires the employer to keep records containing, *inter alia,* the following:

> "(6)(i) Regular hourly rate of pay ***,
>
> (ii) basis on which wages are paid, [*e.g.*, hourly, daily, or

weekly] ***,

(7) Hours worked each workday and total hours worked each workweek ***,

(8) Total daily or weekly straight-time earnings *** including *** overtime worked ***,

***

(10) Total additions to or deductions from wages paid ***."
(29 C.F.R. sec. 516.2(a) (1981).)

Angelo and Tom Tsagalis were clearly aware of the minimum-wage and overtime requirements, and yet they failed to keep the required records. Here, the plaintiff's wages were never computed on the basis of a regular rate per hour. The hourly rate of pay is unknown, and overtime rate of pay cannot be computed. The regular rate of pay is necessary for the computation of overtime. (29 C.F.R. sec. 778.109 (1981).) Therefore, compliance with the record-keeping provisions of the Act was impossible.

Moreover, a thorough search of the record reveals that defendant offered no evidence which would satisfy the reasonable-grounds portion of the test. Nowhere in defendant's brief are its grounds for not complying with the Act even discussed. Defendant's failure to comply with the record-keeping requirements of the Act, and its employment of the plaintiff at a flat salary (without compensation of the regular hourly rate, regular earnings, or overtime earnings), combined with the failure of defendant to provide any evidence concerning this failure, requires us to overturn the trial court's denial of liquidated damages.

We next address the issue of the statute of limitations. Under section 255 of the Act, a plaintiff may not recover back wages for more than two years unless the defendant's violations were wilful. Where a defendant's violations are found to be wilful, a plaintiff may then recover for three years of back wages.

The United States Supreme Court has stated that an acceptable way to articulate a definition of wilful is where "the employer [either] knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [Act]." (*Trans World Airlines, Inc. v. Thurston* (1985), 469 U.S. 111, 128, 83 L. Ed. 2d 523, 536, 105 S. Ct. 613, 625.) This standard was utilized by the Seventh Circuit in *Walton v. United Consumers Club, Inc.* (7th Cir. 1986), 786 F.2d 303. The court noted the Supreme Court's criticism of the "in the picture" standard (which both parties argued before our trial court and in their appellate briefs). The *Walton* court declared:

" 'As employers are required to post *** notices, it would be

> virtually impossible for an employer to show that he was unaware of the Act and its potential applicability. Both the legislative history and the structure of the statute show that Congress intended a two-tiered liability scheme. We decline to interpret the [statute] in a manner that frustrates this intent.' The same argument applies to the selection of the statute of limitations. It must be almost impossible to find an employer unaware that the Fair Labor Standards Act is 'in the picture.' Congress established a two-tiered system with a strong preference for the two-year tier; the 'in the picture' approach turns this into a one-tier system with a period of three years." (786 F.2d 303, 311, quoting *Trans World Airlines, Inc. v. Thurston* (1985), 469 U.S. 111, 128, 83 L. Ed. 2d 523, 537-38, 105 S. Ct. 613, 625.)

As in *Walton*, this case should be remanded so that the trial court may decide in the first instance whether defendant showed a disregard for the Act and an indifference to its requirements.

Plaintiff, in his reply brief, withdrew his claim for prejudgment interest if liquidated damages were awarded. Since we have reversed the court's denial of liquidated damages, we will not address the merits of plaintiff's claim for prejudgment interest.

Finally, plaintiff contends that section 216(b) of the Act provides that any employer who violates the provisions of section 206 or section 207 shall be liable for damages to the employee and such employee shall be allowed reasonable attorney fees and costs. Plaintiff argues that the trial court's denial of any attorney fees in its final order is in conflict with the mandatory language of the Act and *Birbalas v. Cuneo Printing Industries, Inc.* (7th Cir. 1944), 140 F.2d 826, 828-29. We agree.

Defendant responds that only if its actions were found to be wilful would plaintiff be entitled to attorney fees. It appears that defendant likens the award of attorney fees to the award of liquidated damages. Such analogy is incorrect. Section 260 of the Act does provide a defense for the statutory requirement of liquidated damages. However, the award of attorney fees is not encompassed by section 260. Neither party has shown any cases to the effect that the attorney-fee award in section 216(b) of the Act is discretionary. On the contrary, the case law throughout the Federal courts is uniformly to the effect that the award is mandatory, with only the amount being within the discretion of the court. (*Luther v. Z. Wilson, Inc.* (S.D. Ohio 1981), 528 F. Supp. 1166; *Nitterright v. Claytor* (D.D.C. 1978), 454 F. Supp. 130; *Snelling v. O.K. Service Garage, Inc.* (E.D. Ky. 1970), 311 F. Supp. 842; *Foster*

*v. Irwin* (E.D. La. 1966), 258 F. Supp. 709.) In *Weisel v. Singapore Joint Venture, Inc.* (5th Cir. 1979), 602 F.2d 1185, the court noted that an employer can escape paying liquidated damages for violation of minimum-wage provisions of this Act by demonstrating that failure to pay minimum wage was in good faith, but reasonable attorney fees are mandatory. (Accord, *Luther v. Z. Wilson, Inc.* (S.D. Ohio 1981), 528 F. Supp. 1166; *Wright v. Carrigg* (4th Cir. 1960), 275 F.2d 448.) With the case law being so decidedly uniform in requiring an award of attorney fees for a successful litigant under this section, we reverse this provision of the trial judge's order and remand the cause for a determination of a reasonable attorney fee.

In conclusion, we (1) affirm the trial court's finding that plaintiff worked nine hours per workday; (2) affirm the trial court's denial to defendant of a credit for lodging expenses; (3) reverse the trial court's finding that the defendant should be credited with $6 per day for meals; (4) affirm the trial court's denial to defendant of a credit for tips; (5) reverse the trial court's finding that the plaintiff is not entitled to liquidated damages; (6) reverse the trial court's finding that the defendant was not wilful under the Act; (7) affirm the trial court's denial of prejudgment interest; (8) reverse the trial court's denial of reasonable attorney fees; and (9) remand this cause to the trial court for a determination of whether defendant showed a disregard for the Act (for the purpose of determining how far back plaintiff's claim properly extends), for recalculation of plaintiff's damages in accordance with the foregoing, and for a determination and award of reasonable attorney fees.

Affirmed in part and reversed in part and remanded.

HOPF and SCHNAKE, JJ., concur.